<u>NOT FOR PUBLICATION</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Journal Register Company, <u>et al.</u>, | : | Case No. 09-10769 (ALG) |
| | : | |
| Reorganized Debtors. | : | Jointly Administered |

-------------------------------------------------------------x

**ORDER**

A P P E A R A N C E S:

WILLKIE FARR & GALLAGHER LLP
Counsel for the Reorganized Debtors
  By:  Marc Abrams
         Rachel Strickland
         Shaunna D. Jones
787 Seventh Avenue
New York, NY 10019

ROSENBAUM & ASSOCIATES, P.C.
Counsel for Claimant, Margaret Mayer
  By:  John F. Hanahan
1818 Market Street, Suite 3200
Philadelphia, Pennsylvania 19103

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

The claimant, Margaret Mayer (the "Claimant"), has moved to vacate this Court's order, dated September 14, 2010, expunging her bankruptcy claim (the "Motion"). The facts are not in dispute. On March 6, 2009, the Claimant filed a complaint in the Court of Common Pleas of Philadelphia County naming as defendants, among others, the Journal Register

Company and Northeast News Cleaner,[1] and alleging that the defendants caused the Claimant to suffer injury because of their negligent failure to keep certain newspapers, newspaper bundles and ties in a reasonably safe condition.  On March 25, 2009, the Claimant filed a proof of claim (Claim No. 1747) in an unliquidated amount for an alleged personal injury (the "Claim").

The Reorganized Debtors objected to the Claim (the "Claim Objection"), on the grounds of vagueness and failure to include any support for the contention that the Reorganized Debtors were liable for the Claimant's injury.  They also filed a *Notice of Hearing on Reorganized Debtors' Objection to Claim Filed by Margaret Mayer*, which was intended to place the Claimant, through her attorney, on notice that a hearing on the Claim Objection would be held.[2] The Claimant did not timely file a response to the Claim Objection or appear at the hearing on the Claim Objection and on September 14, 2009, this Court ordered that the Claim be disallowed and expunged (the "Disallowance Order").

On October 4, 2010, after the Disallowance Order had been entered, the Claimant filed a response to the Claim Objection and the Motion, which is currently before the Court.  At a hearing held on November 23, 2010, the Claimant's attorney, appearing by telephone, represented that the Claimant had failed to timely respond to the Claim Objection because he did not learn of the Claim Objection until he received notice of the Disallowance Order on or around September 24, 2010, which is when he re-checked his files and discovered the previously unreviewed Claim Objection.  The Claimant has also asserted that the Reorganized Debtors would not be prejudiced by an order vacating the Disallowance Order, overruling the Claim

---

[1] The Northeast News Cleaner is a newspaper that is owned and operated by Journal Register East, Inc., a debtor in the above-captioned Chapter 11 cases.
[2] *See Claim Objection* at ¶ 8.

2

Objection and thereby reinstating the Claim because the Motion was "filed promptly after it was determined that the Reorganized Debtors filed an objection" to the Claim.[3]

The Reorganized Debtors have objected to the Motion and assert that the Motion should be denied because: (i) the Claimant was timely served with a copy of both the Claim Objection and notice of the hearing on the Claim Objection; (ii) the conclusory allegations contained in the Claim and the complaint fail to establish that the Claim is viable or that the Disallowance Order should be vacated; and (iii) granting the Motion would prejudice the Reorganized Debtors and their legitimate creditors.[4]

## **DISCUSSION**

Although not explicitly styled as such, the Claimant appears to seek relief from the Disallowance Order under 11 U.S.C. § 502(j), which provides that a court may reconsider a previously disallowed claim based on the "equities of the case."[5]  Motions for reconsideration are evaluated under the standard of relief in Federal Rule of Civil Procedure 60(b), which is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9024.[6]  In relevant part, Rule 60(b) provides that,

> the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:   (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or misconduct by an opposing party;  (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

---

[3] *See Motion* at ¶ 10.
[4] *See Reorganized Debtors' Objection to Claimant's Motion to Vacate* at ¶ 2.
[5] 11 U.S.C. § 502(j); *In re Enron, Inc., et al.*, 325 B.R. 114, 117 (Bankr. S.D.N.Y. 2005).
[6] *See In re Enron, Inc.,* 325 B.R. at 117; *see In re Spiegel, Inc.*, 2007 WL 1080190, at *3 (Bankr. S.D.N.Y. 2007) (noting that a party's right to seek relief pursuant to Rule 60(b) "is in many ways the functional equivalent of a party's rights under section 502(j) of the Bankruptcy Code.")

Although the sole basis for the relief requested is that the Reorganized Debtors "are not prejudiced" by the Motion as it "was filed promptly" after learning of the Claim Objection, based on the allegations in the Motion, only two possible grounds are pertinent here: Rule 60(b)(1) and Rule 60(b)(6).[7] As the Motion most clearly attempts to persuade the Court that relief is appropriate under Rule 60(b)(1)'s "excusable neglect" standard, we will consider the Motion as requesting relief on that basis.[8]

Excusable neglect is not defined in the Bankruptcy Code, but the Second Circuit has set forth a three factor test to determine whether excusable neglect exists in the context of a Rule 60(b) motion.[9] These factors include: (i) whether the failure to respond was willful; (ii) the existence of a meritorious defense and (iii) the degree of prejudice that the non-movant would suffer if the court granted the motion.[10] While there is a "[s]trong public policy [in favor of] resolving disputes on the merits," such that courts should resolve any doubts in favor of the moving party,[11] Rule 60(b) motions are "generally not favored" and are "properly granted only upon a showing of exceptional circumstances."[12] We analyze each factor in turn.

     1.    **Willfulness**

The Second Circuit has held that in order to be guilty of willfulness, something more than mere negligence or carelessness on the part of the movant is required.[13] For example, in *American Alliance*, a claimant failed to respond to a claim objection because of mistakes made

---

[7] *See Motion* at ¶ 10. The Motion neither makes reference to newly discovered evidence or malfeasance by the Reorganized Debtors, nor does it suggest that relief would be appropriate under the fourth or fifth prongs of Rule 60(b).

[8] Thus, we will not consider the catch-all provision of Rule 60(b)(6), as such relief only applies if one of the more specific provisions of Rule 60(b)(1)-(5) do not apply. *See Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000).

[9] *See American Alliance Ins. Co.,* 92 F.3d 57 (2d Cir. 1996); *see In re Enron, Inc.*, 325 B.R. at 118; *see also*, *In re JWP Info. Servs., Inc.*, 231 B.R. 209, 211-12 (Bankr. S.D.N.Y. 1999) (noting the possible application of the less lenient, four-factor *Pioneer* test but, ultimately, applying the three-factor *American Alliance* test).

[10] *See American Alliance Ins. Co.,* 92 F.3d at 59; *see Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001); *see In re Enron, Inc.*, 325 B.R. at 118.

[11] *American Alliance Ins. Co.,* 92 F.3d at 61; *see Pecarsky*, 249 F.3d at 172; *see In re Enron, Inc.*, 325 B.R. at 118.

[12] *See In re Spiegel*, 2007 WL 1080190, at *3 (citing *U.S. v. Int'l Broth. of Teamsters*, 247 F.3d 370 (2d Cir. 2001)).

[13] *See American Alliance Ins. Co.,* 92 F.3d at 61; *see In re Enron, Inc.*, 325 B.R. at 118.

4

by its in-house counsel's mail clerk.[14]  Despite the fact that the creditor's in-house counsel's mail clerk actually received two notices, these notices were never relayed to Claimant's counsel.  The Court found that the "conduct, though grossly negligent, . . . was not willful, deliberate or evidence of bad faith, though it weighs somewhat against granting relief."[15]  Ultimately, the Court found "an absence of willfulness" and with the other two prongs weighing heavily in favor of the claimant, reversed the lower court's denial of the motion to vacate.[16]

Similarly, in one of the *Enron* bankruptcy disputes, a creditor had received notice of the relevant claim objection and the respective hearing date but did not to review such notices because it assumed that its proof of claim would not be subject to an objection while it was engaged in on-going negotiations with the debtors.[17]  The Court found that the creditor lacked actual knowledge of the pending objection and that its default was "not deliberate in the sense that it made a cognitive decision to allow a hearing on its Claim to proceed and the Order to be entered without its response."[18]  Other courts have also found relevant a creditor's actions once it had actual knowledge that its claim had been expunged.  For example, in *JWP Info. Servs.*, an internal error had caused the creditor's counsel not to receive notice until after an order expunging the creditor's claim had been docketed, and therefore the attorney made no effort to ascertain the status of the objection to its claim, failed to contact either the trustee or the bankruptcy court, and delayed ten months before filing its motion for reconsideration.[19]  The Court deemed the neglect excusable but observed that the result might have been different if counsel had promptly moved for reconsideration.[20]  And in *In re Enron Creditors' Recovery*

---

[14] *See* 92 F.3d at 61.
[15] *Id.*
[16] *Id.* at 62.
[17] *In re Enron, Inc.*, 325 B.R. at 119.
[18] *Id.*
[19] 231 B.R. at 210, 212-13.
[20] *Id.*

*Corp.*, the Court found relevant to its holding that the creditor's conduct was not "willful" the fact that creditor's counsel contacted debtors' counsel to try to reach an agreement once creditor's counsel became aware that its claim had been disallowed and expunged and, when those discussions were not fruitful, creditor's counsel promptly filed a motion for reconsideration.[21]

Here, the evidence supports a finding that the Claimant did not act willfully in allowing the Disallowance Order to be entered because she did not have actual knowledge that a hearing on the Claim Objection was proceeding and promptly sought relief.

2.    **Meritorious Defense**

The Second Circuit has held that "[t]o satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage. 'A defense is meritorious if it is good law so as to give the fact finder [sic] some determination to make.'"[22]  The Reorganized Debtors contend that the Claimant has failed to carry her burden of proving that she has a meritorious defense to the disallowance of the Claim and has instead rested on "bald statements in the Complaint."[23]  At the November 23 hearing, the Claimant asserted that she has an unliquidated claim for her broken knee and for the medical bills related thereto, and that such claim is in excess of $50,000.  The Claimant did not, however, provide any documentation to support the calculation of her claim.  The failure to provide such supporting documentation has been found to be fatal to relief under Rule 60(b).[24]

Even accepting that the underlying litigation has not proceeded because of the automatic stay, there is no reason why the Claimant would be unable to provide any documentation

---

[21] *See* 2007 WL 2480531, at *5 (Bankr. S.D.N.Y. 2007)
[22] *In re JWP Info. Servs.*, 231 B.R. at 213 (citing *American Alliance Ins. Co.*, 92 F.3d at 61).
[23] *See Reorganized Debtors' Objection to Claimant's Motion to Vacate* at ¶ 19.
[24] *See In re JWP Info. Servs.*, 231 B.R. at 213.

regarding the nature and scope of her injuries.[25]   The Claimant also failed to put forward any evidence that the bundle of newspapers that the Claimant allegedly tripped over were related to the Reorganized Debtors.  In short, the Claimant has not provided any evidence to overcome the Reorganized Debtors' contentions that the Claim should be disallowed and expunged due to its vagueness and failure to include any support for its contention that the Reorganized Debtors were liable for the Claimant's injury.

       3.    **Prejudice**

The final factor is whether granting the Motion would prejudice the Reorganized Debtors and their legitimate creditors.  Under the specific facts of this case, the need to liquidate the Claim—and the Claimant would presumably seek a trial in state court in Pennsylvania—would prejudice the Reorganized Debtors.  Here, the Reorganized Debtors have closed all but two of their cases and "anticipate that the claims reconciliation process will be completed for the remaining two Reorganized Debtors in the near future."[26]  This is not an empty contention.  To date, this Court has entered approximately 35 orders disallowing approximately 1,700 claims.  Only four claims remain to be liquidated.   Vacating the Disallowance Order and allowing the Claim to be reinstated would expose the Reorganized Debtors and their legitimate creditors to an unreasonably extended period during which the cases would have to remain open and a final distribution delayed.  The cost of participating in the defense of a Philadelphia lawsuit would likely be substantial.  Moreover, it cannot be ignored that the prejudice to the Claimant does not appear to be great.  There does not appear to be any likelihood of a recovery from an insurance policy of the Reorganized Debtors, and there are other defendants named in the Philadelphia lawsuit.  The Reorganized Debtors' have estimated that the distribution to unsecured creditors in

---

[25] *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300 (2d Cir. 1996) (implying that documentary evidence is an important element of proving that a meritorious defense exists).
[26] *Reorganized Debtors' Objection to Claimant's Motion to Vacate* at ¶ 20.

these cases is approximately nine percent, and the Court is not aware of any facts to indicate that this estimate is materially incorrect.  In sum, this Court finds that granting the Motion would substantially prejudice the Reorganized Debtors and their legitimate creditors while providing relatively little prejudice to the Claimant.

In conclusion, although the first factor weighs in favor of the Claimant, the other two factors weigh against her.  Therefore, the Motion for reconsideration of the Disallowance Order is denied.

Dated: December 23, 2010
       New York, New York

                                        */s/ Allan L. Gropper*
                                        UNITED STATES BANKRUPTCY JUDGE